| 68 | 465 |
|----|-----|
| 74 | 98 |
| 68 | 465 |
| 80 | 367 |
| 80 | 507 |

WALKER BROTHERS, Respondents, v. THE MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, January 11, 1897.

1. **Railroads**: FIRES: STATUTES: INSURER. Under section 2615, Revised Statutes, 1889, railroads are insurers against loss to property destroyed by fire communicated from their engines, and no negligence short of fraud will bar a recovery.

2. ——: ——: ASSUMPTION OF LOSS BY THIRD PARTY: SCIENTER. In an action against a railroad for property destroyed by fire communicated from its engine, the fact that the destroyed property was in a house built by a third party on the right of way with the understanding that the road would not be liable for fires communicated to such building and contents by engines, can not defeat a recovery, especially where the plaintiff is without knowledge of such contract. *Quaere:* Whether such contract is not against public policy?

3. ——: ——: ——: TRESPASS. A person who has ordered cars of a railroad to ship hay, and brings it on the right of way for such shipment, is not a trespasser, though he places the hay in a building built on the right of way by a third party who relieved the railroad from liability for loss occurring to building and contents by fire.

4. ——: ——: EXCESSIVE VERDICT. The verdict in this case is not excessive.

VOL. 68 app—30

5. ———: ———: STATUTE: COMMON LAW: PLEADING. In an action against a railroad company to recover damages for burning plaintiffs' hay, the fact that the petition may allege negligence on the part of the defendant, will not make the action one at common law, if there is sufficient alleged to bring it under the statute, especially where the case was tried on the theory of the action being under the statute, and was so presented in this court in the original brief of the appellant.

6. ———: ———: EVIDENCE: JURY. The evidence reviewed and held sufficient to send the question to the jury.

7. ———: ———: ASSUMPTION BY THIRD PARTY. In an action against a railroad company to recover damages for property destroyed by fire, the contract, subsisting between the railroad company and the owner of the building on the right of way, in which the property was when destroyed, tending to relieve the railroad from damages by fire, is not in controversy, and the court may properly decline to pass upon it.

8. Appellate Practice: ASSIGNMENT OF ERROR: MISJOINDER OF PARTIES: EVIDENCE. Where appellant in his original brief and motion for rehearing fails to make an assignment of errors as to the misjoinder of parties plaintiff, such objection comes too late in a rejoinder to respondent's reply to his motion for rehearing, especially where in the record there is no evidence supporting such contention.

9. ———: ———: COMMON CARRIER: DELIVERY: NOTICE. In an action to recover damages for hay burnt by a railroad company, the question of delivery and notice of the hay being on the right of way for shipment has no place in the case.

10. ———: ———: CONTRIBUTORY NEGLIGENCE: FRAUD. In such action the question of contributory negligence, short of actual fraud, is no defense.

11. Appellate Practice: VERDICT FOR RIGHT PARTY. Where, on the facts of the case, the defendant is manifestly liable, and the judgment is clearly for the right party, it will not be disturbed, though there may be technical errors.

*Appeal from the Bates Circuit Court.*—HON. J. H. LAY, Judge.

AFFIRMED.

*R. T. Railey* and *Lon O. Hocker* for appellant.

(1) The court erred in striking out part of the amended answer. It constituted a valid defense to the cause of action alleged in the petition. (2) In their

petition the plaintiffs allege a cause of action at common law for negligence; in their proof, they rely upon section 2615, Revised Statutes, 1889, making proof of negligence unnecessary where property is destroyed by fire communicated from an engine. Our contention is that this section has no application to the facts of the case. (3) The rights of these plaintiffs could not be greater than those of the owners of the crib, the original lessees. (4) The allegations of the answer are substantially that this crib was built on defendant's right of way under a license from defendant, by Wilcox and others, they assuming risks from fire, and that plaintiffs, without authority from any one, stored their hay in said crib. Now, the trial court held that this constituted no defense, and so holding sustained plaintiffs' motion to strike out. Under these allegations of the petition, plaintiffs were neither more nor less than trespassers. From time immemorial it has been held that a landowner owes a trespasser or licensee absolutely no duty except that of not willfully or wantonly injuring him. *Hughes v. Railroad*, 66 Mo. 321, and cases cited; *Ouderdouk v. Smith*, 27 Fed. Rep. 874; *Larmore v. Iron Co.*, 101 N. Y. 392; *Sutton v. Railroad*, 66 N. Y. 246; *Levery v. Nickerson*, 120 Mass. 306; *Cahill v. Layton*, 57 Wis. 614, and cases cited; *Knight v. Abert*, 6 Pa. St. 472. The legislature did not intend that section 2615 should have any such absurd construction. (5) Plaintiffs' instruction numbered 1, for the reasons already discussed, does not declare the law, and the court committed error in giving same. (6) The verdict is excessive.

*Graves & Clark* and *A. L. Graves Jr.* for respondents.

(1) While it is true the petition charges negligence, the plaintiffs did not have to prove negligence, and

such allegation of negligence is mere surplusage. This petition charges all facts necessary to recover under the statute. *Campbell v. Railroad*, 121 Mo. 340–348. (2) The only issue involved in a case of this kind is, was the fire communicated to plaintiffs' property directly or indirectly, by a locomotive engine, in use upon defendant's road. *Campbell v. Railroad*, 121 Mo. 340–349; *Mathews v. Railroad*, 121 Mo. 298. (3) It makes no difference that this hay was stored on the right of way. Our statute is very broad. It does not limit the liability to property of an adjoining property owner. *Campbell v. Railroad*, 121 Mo. 340–352; R. S., secs. 2614, 2615. But that portion of section 2614, *supra*, which made it unlawful to stack hay or grain within one hundred yards of the right of way, was repealed in 1891, and our statute thereby made broader than it had ever been. Sess. Acts of 1891, p. 82. (4) The second count of the amended answer was properly stricken out. *Campbell v. Railroad*, *supra*; *King v. Railroad*, 41 Pac. Rep. 786. The alleged agreement, being one in direct conflict with the statutory liability of defendant, is void, even if plaintiffs had known of the terms thereof. It is an agreement against public policy, as contained in the statute. The statute is one of public policy and for the protection of the public. *Mathews v. Railroad*, *supra*; *Campbell v. Railroad*, *supra*; *Paddock v. Railroad*, 60 Mo. App. 328. (5) Plaintiffs were not trespassers by being upon defendant's depot and switch grounds. Persons or property upon such grounds by reason of business with the railway company are not trespassers. *Griswold v. Webb*, 40 Am. & Eng. R. R. Cases (R. I.), 683; *Hack & Bus Co. v. Lootsma*, 84 Mich. 194; *Bradford v. Railroad*, 160 Mass. 392; 35 N. E. Rep. 1131. (6) Even if this hay was not at the depot grounds of defendant, the evidence shows that this switch was used by the company for loading hay

and grain, and under this evidence and the further evidence that it was placed there to be loaded on defendant's cars, then plaintiffs were not trespassers. *Railroad v. McLean*, 74 Tex. 646; 12 S. W. Rep. 843. (7) Plaintiffs' instruction is the law of this case. *Mathews v. Railroad, supra; Campbell v. Railroad, supra.* (8) The amount of the judgment is supported by the evidence.

GILL, J.—Plaintiffs sued defendant for damages because of destruction by fire of thirty-two tons of baled hay, which they had stored in a building alongside defendant's side track at Passaic station, awaiting shipment, and for which cars had been ordered. It was alleged, and the evidence tended to prove, that the hay was destroyed by fire escaping from one of defendant's locomotive engines, which was, at the time, switching cars in the yards at Passaic.

In addition to a general denial, defendant sought to escape liability by reason of the following facts set up in its answer, to wit: that the building STATEMENT. in which the hay was stored was erected on defendant's right of way and owned by Wolfe and others, under and by virtue of an agreement between the railroad company and said parties, wherein it was stipulated that Wolfe & Company should pay no rent, but that they would assume all loss or damage by fire sustained by reason of the building and its contents being located on said right of way; and that the hay was placed therein without the knowledge, consent, or authority of Wolfe & Company, or of the defendant. It was not alleged in the answer that plaintiffs had any knowledge of this agreement between defendant and the owners of the building.

On plaintiff's motion, the court struck out the foregoing special defense. The case was tried on the

petition and answer (which then contained only a general denial), resulting in a verdict and judgment for plaintiffs, and defendant appealed. It is perhaps proper also to state that at the close of all the evidence (the defendant, however, introducing none) the defendant demurred thereto, which was overruled, and the court, over defendant's objections, gave the following instruction:

"The court instructs the jury that if you find and believe from the evidence that the hay of the plaintiffs was destroyed by fire and that the said fire was occasioned by sparks of fire which escaped from a locomotive engine belonging to the defendant, and in use upon its road, then you should find for the plaintiffs, and assess their damages at such sum as you believe from the evidence such hay was worth, not exceeding the sum of two hundred and eighty-eight dollars, the amount sued for."

I.   Though a formal objection was made to the court's instruction just quoted, defendant's counsel, in their original brief (and which was the only brief filed by them before the cause was first submitted) made but two points: *First*, that the court erred in striking out the special defense referred to in the statement, and, *second*, that the damages awarded by the jury ($288) were excessive. Since that, however, in a motion for rehearing, other matters of defense are suggested which I will notice later on.

As already stated, the defendant, by its answer, interposed, *first*, a denial of the allegations of the petition, and, *second*, a further defense, in the nature of a confession and avoidance, that even if the hay was destroyed in the manner charged in the petition yet defendant was not liable therefor, because the building in which the hay was stored was erected by Wolfe & Company on defendant's right of way, under an agree-

ment that they (Wolfe & Company) would assume such damage by fire as is here complained of; "and that by reason of the premises, if the hay aforesaid was burned, as described in the petition, the plaintiffs assumed the risk in having willfully and without any authority of law placed said hay in the crib aforesaid, under the circumstances aforesaid." The main question is whether or not the court erred in striking out this special defense. In other words, do the facts therein stated constitute a valid defense to the action? In my opinion, they do not and the court ruled correctly.

Plaintiff's right of recovery is based on a late statute, being section 2615, Revised Statutes, 1889, which imposes an absolute liability on the railroad company for all damages "to every person and corporation whose property may be injured or destroyed by fire communicated directly or indirectly by locomotive engines in use upon the railroad owned or operated by such railroad corporation." Formerly it required negligence to be shown on the part of the railroad company, before it could be held; but, under the statute adopted in 1887, and since continued, the company is made an insurer absolutely "responsible in damages to every person * * * whose property may be injured or destroyed by fire directly or indirectly communicated" by its locomotive engines. The supreme court has lately had this statute before it, where its constitutionality was attacked, but the law was upheld and given full force as it is written. *Mathews v. R'y*, 121 Mo. 298; *Campbell v. R'y*, 121 Mo. 340. In these cases, too, the rule applied to ordinary insurance companies was enforced, to wit, that no negligence short of fraud on the part of the property owner will bar his right of recovery. *Mathews v. R'y*, 121 Mo. at page 336.

RAILROADS: fires: statutes: insurer.

But it is urged by the defendant's able counsel that, according to the allegations stricken out of the answer, plaintiffs deposited their hay in a building at Passaic, which the owners (Wolfe & Company) had erected on a contract exempting the railroad company from this statutory liability for fires that might be communicated by passing locomotives, and that plaintiffs placed the hay in said building without the authority or consent of said Wolfe & Company or of the railroad company. In view of these circumstances, the contention is that plaintiffs, in the use of the building, occupied the same relation to the railroad company as did Wolfe & Company; and that as the owner of the building could not recover for such damages, neither could the plaintiffs.

*—: —: assumption of loss by third party: scienter.*

Speaking for myself alone, I think it may be seriously doubted if such a contract as that defendant had with Wolfe & Company—or at least that portion relieving the railroad company of responsibility for fires communicated from its engines—can be enforced. There is much plausibility in the claim that it so contravenes the public policy of the statute that the courts ought not to enforce it. Opposing counsel have discussed this and cited authorities apparently sustaining the respective theories of that question. I do not, however, regard it necessary in this particular case to pass on that proposition.

Assuming, however, the validity of this stipulation in the contract entered into between Wolfe & Company and the defendant railway company, to the effect that the company should not be held to pay Wolfe & Company for any losses by fire communicated by passing locomotives, and I yet fail to understand upon what theory of law plaintiffs can be bound thereby, or precluded from the recovery of such losses as *they* may sustain. Plaintiffs were entire strangers to any such

contract. They were not even *privies* in any sense of the word. Plaintiffs were not using the building under and by virtue of any agreement existing between Wolfe & Company and the railroad corporation. Indeed, the answer fails to allege that plaintiffs had any notice of any such contract. Whatever covenant liability Wolfe & Company might have been under to the defendant was a matter entirely between them. *King v. Southern Pacific Co.*, 109 Cal. 96. In the case just cited, the supreme court of California had under consideration facts very similar to those at bar, except that in that controversy King was the person in charge of the warehouse, as agent for the owner, and knew of such an agreement between the owner and the railroad company as relieved the company from liability, and yet he was permitted to recover for loss of his individual goods stored in the building at the time.

It is further argued that plaintiffs were trespassers —that they entered into and deposited their hay in the building "without leave or license" from anyone; and for that reason, they had forfeited any claim for the destruction of their property. This is a matter, it seems to me, that ought not to have any bearing on this controversy. As to the *defendant*, plaintiffs could not, under any theory, be deemed and treated as trespassers; and if, in protecting their hay at the station, they wrongfully or without leave used the building which belonged to Wolfe & Company, this was a matter about which it (the defendant) had no right to complain. Plaintiffs had the right to bring their hay to Passaic station and to deposit it on the right of way, ready for loading and shipping; and if in so doing they made use of a building there situated and owned by a third party, there might be a trespass on the property of *such third party*, but certainly not on that of the *defendant*.

The verdict was not excessive.   The testimony was to the effect that that kind of hay was worth, at Passaic station, $9 per ton.   It stands undisputed that there were thirty-one and one fourth tons destroyed; the verdict was for $288, of which plaintiffs remitted $8, and the judgment went for $280, which was the correct amount.

*——: ——: excessive verdict.*

II.   As I understand it, the foregoing disposes of every point made in defendant's brief as originally submitted with the case.   But in the motion and argument for rehearing, some other matters are suggested which I deem it proper to notice.

*First.*   Defendant's counsel finds fault with the statement contained in the original opinion to the effect that this action is based on section 2615 of the Missouri statutes.   The action is said to be one for common law negligence and not one under the statute. It is true, now, the petition does state that the defendant was guilty of negligence in the character of locomotive it used and the manner of its operation; but the petition also alleges all the facts necessary to make a case under the statute. Under this state of things, then, *Campbell v. R'y*, 121 Mo. 340-348, applies.   The second point insisted on in that case by appellant's counsel was (quoting): "Plaintiff's petition states a common law action, purely, for negligently permitting fire to escape from its engines.   It does not purport to state a statutory cause of action under section 2615.   *   *   *   Plaintiff alleged one cause of action in his petition and was permitted to recover upon another;" citing authorities. The court, in answer to this point made by counsel, said:   "The petition charged that the fire causing the injury was permitted to escape through the negligence of defendant and the court permitted a recovery under

*——: ——: statute: common law: pleading.*

the statute, without proof of negligence. Defendant assigns this action of the court as error, in that it permitted a recovery upon a cause of action different from that charged in the petition. The petition states all the facts necessary to authorize a judgment under the provisions of the statute, and in addition thereto, the allegation of negligence. By the statement of more than was required, plaintiff did not forfeit his right to recover upon proof of the facts he was required to state in his petition."

It would seem, then, that the petition here was sufficient to justify a recovery under the statute. And so the litigants in this case treated it. The cause was tried in the circuit court on that theory, and no such objection as that now made appears in the record of the trial. More than this, in appellant's brief on which the case was submitted to this court, it is practically admitted, as stated in our original opinion, that the plaintiff's cause of action is based on section 2615 of the statute. There is not a word of objection to the want of harmony between the petition and the evidence. Counsel there states that the petition alleges negligence, but that the plaintiffs, "in their proof, rely upon section 2615, Revised Statutes, 1889, making proof of negligence unnecessary, where property is destroyed by fire communicated from an engine." The counsel then follows with the announcement ·of his position. He says: *"Our contention is that this section (2615) has no application to the facts of the case."* Further down on the same page (20) of the original brief, he says: "The question now presented is, do the facts in this case entitle the plaintiffs to the benefit of this statute." And this is the sole question (with the exception of the complaint of excessive damages) which defendant's counsel presented in that brief. He himself treated plaintiff's cause of action as based on the

statute.    Why then complain of this court for adopting his own theory?

*Second.*    Counsel for defendant is certainly in error when he declares that there was not a "scintilla of evidence adduced at the trial" to establish this fact, to wit, that the hay was destroyed by fire that escaped from defendant's locomotive.    On the other hand, the tendency of the evidence is all that way.    As I read this record that fact is shown almost beyond question.    The witnesses were few and the testimony not lengthy, and I will here present, in a brief way, just what they testified to in relation to that matter.

—:—; evidence: jury.

The first witness was D. O. Walker, one of the plaintiffs.    He was not present at the fire, but he states that the hay was hauled to Passaic station during the four days, July 21, 22, 23, and 24; finished the morning of the twenty-fourth; that the hay was deposited near to the side track and in this corncrib, pen, or shed, ready to be loaded in the cars, which he had ordered from the agent; that this side track was used for loading grain and hay.    In regard to this, the evidence all shows that this was a small station, with no regular depot building, that the company's business was transacted by a merchant from a store near by, and that this side track was the point from which grain and hay were habitually handled.

*R. A. Wilcox* was the second witness.    He resided within a quarter of a mile of Passaic station and saw the hay burn.    He was asked what he saw at the time. *Ans.* "I saw it burn up and burning."

"*Q.*    Did you see anything before that?    Did you see any train there?    *A.* Yes, sir; I saw an engine.

"*Q.*    State to the jury what you saw with reference to the train?    *A.* Well, there was an engine there

switching, and had some cars on the loading track just at the time this was taking place.

"*Q.* How close did the engine run to this hay? *A.* Oh, I suppose six or eight feet, or ten.

"*Q.* Six or eight or ten feet of the hay? *A.* Yes, sir.

"*Q.* When did the hay take fire with reference to the time the engine was running back and forth where the hay was? *A.* It was about the same time it was on the loading track; they were setting out some cars.

"*Q.* When the hay took fire? *A.* Yes, sir.

"*Q.* You have known that little town ever since it started? *A.* Yes, sir.

"*Q.* You may state to the jury if the Missouri Pacific Railroad Company has a switch or side track for the purpose of receiving or shipping grain or hay? *A.* Yes, sir.

"*Q.* How long was it they had such side track? *A.* I don't know as I could give the exact date.

"*Q.* About how long? *A.* Oh, it has been four or five years.

"*Q.* During that time have they had an agent there? *A.* Yes, sir; I don't know as they have all the time since that was put in; but for three or four years.

"*Q.* Did they have an agent there during July, 1894? *A.* Yes, sir.

"*Q.* Where was the fire at with reference to the switch, when you first noticed it; which side of the hay; was it on the side facing to the switch, or the opposite side? *A.* Where I first saw it was pretty near all over the top and all."

The third witness was W. C. Leslie, the defendant's section foreman. Said he remembered the burning of the hay, etc. The following questions and answers are taken from defendant's abstract:

"*Q.* Where were you when the hay was burned, Mr. Leslie? *A.* I was in about twenty or thirty yards of it when I saw the fire.

"*Q.* Was there any train there at that time? *A.* Yes, sir; there was an engine on the side track.

"*Q.* What was the engine doing? *A.* Switching some cars.

"*Q.* One of the Missouri Pacific engines? *A.* Yes, sir.

"*Q.* How close did the engines pass to the hay? *A.* I guess about eight or ten feet.

"*Q.* Where was the fire when you first observed it? *A.* It was in the corner of the pen next to the railroad.

"*Q.* Next to the railroad? *A.* Yes, sir.

"*Q.* How long before that had it been since the engine passed by there? *A.* I don't remember; it would have been some time, though.

"*Q.* How long? *A.* Oh, I guess two or three hours, I expect; I don't recollect how long it had been.

"*Q.* Don't know how long it had been? *A.* No, sir.

"*Q.* Had the engine left that station? *A.* No, sir; hadn't left.

"*Q.* It was still there? *A.* Yes, sir.

"*Q.* Where was it? *A.* It pulled down after it left the hay, it pulled down to the north end of the switch.

"*Q.* Did it come back on the main track? *A.* Yes, sir.

"*Q.* How far was it from the hay, as it passed back on the main track? *A.* I don't think it passed back by the hay on that main track; the train was on the main track and the engine was doing the switching on the side track.

"*Q.* Did that engine stay there two or three hours switching? *A.* No, sir; it is about half an hour there when it is on time.

### CROSS-EXAMINATION.

*By Mr. Railey:* "*Q.* How long was it before the fire when you saw the engine come out by the hay? *A.* The engine pulled out and I saw the fire just starting.

"*Q.* You are in the employ of the railroad company? *A.* Yes, sir.

### REDIRECT EXAMINATION.

*By Mr. Graves:* "*Q.* The engine just pulled out when you saw the fire? *A.* Yes, sir.

"*Q.* How long had the engine been there switching that day? *A.* Not very long; I don't recollect; I don't suppose more than twenty minutes.

"*Q.* You noticed the fire when the engine pulled out? *A.* Directly the engine left I saw the fire."

*T. A. Son* testified: Was at the time of the fire and when sworn as a witness conducting a grocery store; also defendant's agent at Passaic.

"*Q.* Do you recollect the circumstances of Walker Brothers having some hay the twenty-fourth day of July, 1894? *A.* Yes, sir.

"*Q.* It was by your switch there at Passaic? *A.* Yes, sir.

"*Q.* By the side of it? *A.* Yes, sir.

"*Q.* What became of that hay? *A.* It burned.

"*Q.* Was there a train there at that time? *A.* About that time.

"*Q.* What was the locomotive engine doing? *A.* Placing some cars.

"*Q.* In placing the cars, how did it have to run with reference to this hay? *A.* It passed along by the side of it.

"*Q.* Do you know for what purpose that hay was there? (Objected to as immaterial and hearsay; objection overruled; exception.)

"*Q.* Did you notice the engine when it passed by the hay, Mr. Son, switching up and down there? *A.* Coming in or going out?

"*Q.* Over there at any time? *A.* I never knew the engine was in until about the time they placed the cars.

"*Q.* About the time they placed the cars? *A.* Yes, sir; they placed the cars south of the hay.

"*Q.* What were they placing cars there for? *A.* I think it was some empties for loading.

"*Q.* For Walker Brothers? *A.* I could not tell you positively.

"*Q.* Where was the fire when you first noticed it? *A.* The hay was afire and pretty well under headway before I saw it.

"*Q.* How long was the engine switching around there if you recollect? *A.* A very short time.

"*Q.* Was the engine still there when you noticed the fire? *A.* It was at the lower end of the switch.

"*Q.* It passed down at the lower end of the switch? *A.* Yes, sir."

When, now, this evidence is taken in connection with the well known facts that locomotives carry fire and that they do sometimes emit sparks, even when the best appliances are used, is it not a mistake to contend that there *was not a scintilla of evidence* adduced at the trial to prove that plaintiff's hay was destroyed by fire coming from the locomotive then operated in and about the side track where said hay was stored? On evidence much weaker than this, it was held error to take the case from the jury. *Kenny v. Railroad*, 70 Mo. 243; *Redmond v. Railroad*, 76 Mo. 550; *Torpey v. R'y*, 64 Mo. App. 382.

*Third.*   The former opinion of this court is further attacked because it declined to pass on the validity of the stipulation contained in the contract between the defendant and Wolfe & Company, wherein the railroad company was exempted from damages resulting to said Wolfe & Company, from fire communicated by defendant's locomotives.   Since this suit was not brought by Wolfe & Company, but by another, not a party to that contract, we considered a decision of that question unnecessary and entirely foreign to the controversy in hand. We thought this would be bringing something into the case that did not directly concern it.   I yet fail to see any necessity for so doing.   It would involve, on our part, a needless choosing between lines of conflicting decisions.   However, for the purposes of this case, we assumed the entire validity of that contract, but held that it had no application in a controversy between the defendant and plaintiffs, since the latter were not, in any sense of the word, parties thereto.

*Fourth.*   I do not think that defendant, at so late a stage of this litigation ought to be heard to complain of the court's action in striking out that part of its answer alleging that "Funk Bros., of Bates county, Missouri, had an interest in the hay claimed to have been destroyed in the petition, and are necessary parties to a complete determination of this action."

While formal assignments of error are no longer required in our appellate practice, yet the brief of the appellant, which is to be taken in lieu thereof, should point out the matters relied on for reversal.   There was here no assignment of errors, except such as was to be found in appellant's brief.   And in that, no mention whatever was made of the matter alluded to.   There is

VOL. 68 app—31

not a word under the head of "Points and Authorities," or even in the argument, suggesting an error of that nature. Neither is it mentioned in the motion for rehearing filed here. The first appearance of such a complaint is in the argument filed later in support of the motion for a rehearing; and which said argument, too, was filed after the plaintiffs had furnished here their reply to defendant's motion.

Further than this, the record throughout shows that no such defense was relied on. The evidence stands undisputed that plaintiff purchased the hay from Funk Brothers, and that they, the plaintiffs, at the time of the fire, owned the same. Their title was put in issue by the general denial, but there was not a scintilla of evidence introduced at the trial which even tended to question plaintiff's absolute ownership of the hay. If, then, there was an error in this regard, it was clearly not such as materially affected the merits of the action and should, for that reason, too, be disregarded. R. S. 1889, section 2303.

*Fifth.* The matter of *delivery* and *notice* referred to in defendant's argument in support of the motion for rehearing, has no place in cases ———:———: common carrier: delivery: notice. of this nature. The rule there alluded to applies only to those cases fixing the inception of the common carrier's liability for goods to be transported.

*Sixth.* Neither is the question of contributory negligence in the case, as I understand it. There was no such defense set up in the answer; nor was there ———:———: contributory negligence: fraud. such evidence adduced at the trial as would justify the court in declaring, as matter of law, that plaintiffs failed to exercise ordinary care. Besides, as held in *Mathews v. R'y*, 121 Mo. 336, contributory negligence, short of actual fraud, would be no defense.

*Seventh.* Finally, even to concede that some technical errors can be found in this record, the judgment is so manifestly for the right party that it ought not to be disturbed. The material facts are few, simple, and practically undisputed. Walker Brothers brought thirty-one and one fourth tons of baled hay to Passaic station for shipment over defendant's road. Awaiting cars which they had ordered from the local agent, the hay was stored at the side track, the place provided by defendant for receiving and loading such property; and while there, one of defendant's locomotives, while switching empty cars onto this track, discharged sparks of fire, from which the hay was burned. Under this state of facts, the statute has declared the defendant liable.

APPELLATE practice: verdict for right party.

In my opinion, the judgment ought to be affirmed. The other judges concurring, it is so ordered.