E. F. ORDELHEIDE, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 2, 1899.

1. **Loss by Fire:** COMMON CARRIER'S LIABILITY FOR FIRE COMMUNICATED BY ITS LOCOMOTIVES: CONTRACT OF EXEMPTION. It is competent for a party to contract against liability for damages caused by his simple negligence; but it is not competent for parties to make agreements in violation of an express provision of law, nor one which injuriously affects the public. Held, that the contract under consideration in the case at bar does not injuriously affect the public.

2. **Practice, Appellate.** (Dissenting opinion by Judge Biggs.) The rule of practice is that where an appellate court, in an action at law, reverses a judgment in favor of plaintiff, the cause will be remanded, unless it appears that all the facts have been proven, and that upon such facts the plaintiff could not possibly recover.

*Appeal from the Montgomery Circuit Court.*—HON.
ELLIOTT M. HUGHES, Judge.

REVERSED.

J. D. BARNETT and JOHNSON & DRUNERT for respondents.

The petition, the answer, the demurrer to the answer, the stipulation, the argument of counsel and the opinion of the court, all preserved in the record, show very plainly what the issues were and the theory upon which the case was tried, in the circuit court, and that the provisions of the constitution, the statute and the rule of our appellate courts were considered and discussed. The appellant will not be permitted to change the issues in the case, in this court, or to try the case upon a theory different from that upon which it was tried below, but will be restricted to the case as presented. Upon it he must stand or fall. The petition states all the facts necessary to authorize a judgment under the provisions of the statute, and in addition thereto, the allegation of negligence. By the statement of more than was required, plaintiffs did not forfeit their right to recover upon proof of the facts they were required to state and did state in their petition. Radcliffe v. Railroad, 90 Mo. 131; Morrow v. Surber, 97 Mo. 155; Campbell v. Railway, 121 Mo. 340; Walker Bros. v. Railway, 68 Mo. App. 465. By stating more than was required plaintiff did not forfeit his right to recover upon proof of statements he was required to make. It is not necessary for plaintiff to prove all the facts alleged, but only sufficient of the allegations to make a cause of action. Radcliffe v. Railway, 90 Mo. 131; Morrow v. Surber, 97 Mo. 155; Walker Bros. v. Railway, 68 Mo. App. 465. The Missouri statute reenacts the ancient common law by which one permitting fire to escape negligently or otherwise is liable absolutely to anyone injured thereby or

therefrom. Hence, if the statute reenacts the ancient common law and plaintiff's suit is a common law action, still defendant's lease is no defense to the action. It violates the common law reenacted by the Missouri statute, and is, therefore, against public policy and void. Matthews v. Railway, 121 Mo. 298, 325; Campbell v. Railway, 121 Mo. 340. The sufficiency of the petition is settled beyond question or controversy by the authorities cited above, all of which are peculiarly, plainly and appropriately applicable to the cases at bar and directly in point. Furthermore, all defects and insufficiencies, if any, were waived by the stipulation and trial of the case by agreement upon its merits in the circuit court. Authorities cited, *supra.* Also directly in point see Walker Bros. v. Railway, 68 Mo. App. 465.

GEORGE S. GROVER and G. P. SMITH for appellant.

It is wholly immaterial in this case as to what was said by counsel for defendant in the court below, in the course of argument, as to the status of defendant at the time of or subsequent to the execution of the lease. Such statements did not amount to an admission; did not bind the defendant here, and therefore they have no responsible place in this record. Russ v. Railway, 112 Mo. 50. Under no circumstances could even the undisputed statements of plaintiff's counsel, made during the course of the same argument in the court below, bind either party, particularly the defendant; and why such statements were retained in the bill of exceptions passes our comprehension, as, under the rule in the Russ case, *supra,* they were all equally incompetent for any purpose in this controversy. Nor is it material whether these are common law or statutory actions. Under the rule announced in the Nall case, 97 Mo. 68, they are clearly common law actions. At common law, as we have already shown in our original brief, a contract of this kind violates no rule of public policy. And,

under section 2615, here relied on, as already stated in our original brief, the contract in question is simply one of insurance, and therefore it is expressly authorized by that provision of the statute. This meritorious and praiseworthy act should not be transformed from a shield into a sword so as to change the relation between the parties and thereby annul the valid agreement here under review. Besides, such an issue as an abuse of a corporate power could not be raised collaterally in these cases, as it could only be tendered in a direct proceeding instituted by the state for that purpose. In Land v. Coffman, 50 Mo. 243, following Chambers v. St. Louis, 29 Mo. 543, it was held by the supreme court that the question as to the amount of land a railroad corporation might hold under its charter could arise only in a direct proceeding by the state and not in a collateral action. This doctrine was followed in Martindale v. Railroad, 60 Mo. 510; Kinealy v. Railroad, 69 Mo. 663; Hovelman v. Railroad, 79 Mo. 640; Ins. Co. v. Smith, 117 Mo. 289; Hill v. Mining Co., 119 Mo. 31; and may, therefore, be regarded as the settled law of the state. The trial court and the plaintiffs, therefore, were alike precluded from passing upon or tendering such an issue in the cases at bar.

BLAND, P. J.—The petition is as follows: "Plaintiff states that the defendant is a corporation duly incorporated under and by virtue of the laws of the state of Missouri, and was at the time of the grievance hereinafter mentioned, as such corporation, the owner and occupier of a certain railroad, together with depots, switches, sidetracks, and facilities for receiving and unloading freight, stock and goods, which said railroad runs through the counties of Warren and Montgomery, in the state of Missouri, and as said corporation was at said time operating, working, managing and running its said railroad by its agents, servants and employees, and using thereon its locomotives, engines, cars and trains.

"That on or about the 6th day of April, 1895, the plaintiff was the owner of a certain building, used as a warehouse, elevator or grain house, together with horse-power, belting and all appliances and machinery necessary and required to run, work and operate the same, which said building, with the said horse-power, belting, appliances and machinery therein, stood adjoining or near the depots, switches, sidetracks, at or near the defendant's station or depot at Wright City, in said Warren county, all of which was of the value of two thousand dollars.

PETITION.

"That on or about said date, the defendant so carelessly and negligently operated, worked, run and managed its said railroad, and carelessly and negligently used thereon defective and insufficient locomotives and engines, and so carelessly, negligently and unskillfully operated, worked and managed and run its locomotives, engines, cars and trains on its said switches, railroad and sidetracks, that fire escaped from its locomotives and engines and was communicated to plaintiff's said building, warehouse, elevator or grain house, and the same, together with said horse-power, belting and appliances, and machinery therein, as aforesaid, were damaged and destroyed to plaintiff's damage in the sum of two thousand dollars.

"Wherefore, by reason of the premises, the plaintiff says he is damaged in the sum of two thousand dollars, for which and costs of suit he asks judgment."

Defendant answered as follows: "Now comes the defendant in the above entitled cause, by its attorneys, and for its answer to the petition of plaintiff therein filed, admits that it is and was on the 6th day of April, 1895, a corporation duly incorporated under and by virtue of the laws of the state of Missouri.

"Defendant denies each and every other allegation contained and set forth in plaintiff's said petition.

"For other and further answer to the petition of the plaintiff, defendant says that on or about the first day of November, 1892, the plaintiff herein entered into a certain written and printed agreement with the defendant for the lease of certain ground, then belonging to the defendant in Warren county, Missouri, in said agreement described, for the purpose of erecting thereon a certain grain house, said agreement expiring under its terms, on or about the 31st day of October, 1897, which said agreement was in words as follows, to wit:    'This agreement, made and entered into this first day of November, A. D. 1892; by and between the Wabash Railroad Co., party of the first part, and E. F. Ordelheide, of Wright, in the county of Warren, and state of Missouri, party of the second part,

"Witnesseth, That the said party of the first part, for and in consideration of the sum of one dollar per annum, in advance, to said party of the first part paid by said second party, and upon the express condition and stipulation that said second party shall assume all risk of fire from every cause, and shall hold and keep harmless said first party from any and all damages whatsoever, from fire or any other cause, to any building or buildings that may be erected on the land herein leased, or their appurtenances or contents, which' guarantee enters into and forms part of the consideration that induces said first party to make this lease; and for the further covenants and agreements hereinafter contained on the part of the second party to be kept and performed, hereby grants unto the said second party the right to occupy and use for the purposes of grain house, the following described part of the grounds of the said party of the first part, at Wright, county of Warren, and state of Missouri, to wit:    at a point on the west line of South street, twenty-three (23) feet north of the center of the Wabash main track; thence northward along the south side of South street forty-five (45) feet to the north line. of Wabash right of way; thence westward along the right of

way line one hundred and ten (110) feet; thence southward at right angle thirty-eight (38) feet to a point seven and one-half (7 1-2) feet north of the center of the Wabash house-track; thence eastward parallel to the house-track, and seven and one-half (7 1-2) feet from the same, to the point of beginning.

" 'And said first party further covenants to and with said second party, that said second party shall have the right to occupy and use such portions of land, selected and designated as aforesaid, for the location of said grain house, for and during the full term of five (5) years from the date of this agreement, unless the occupancy of said premises shall be sooner terminated in the manner hereinafter provided.

" 'And the said second party covenants and agrees with the said party of the first part, to pay all taxes that may be assessed on said grain house and the herein leased premises, and to conduct the business of storing and forwarding grain or other property, according to such rules as the party of the first part may prescribe in relation to such business at its stations generally.

" 'And the said second party hereby further agrees for himself, his heirs or assigns, that they hereby assume all risk of fire, from any cause whatsoever; that if any insurance is effected during the continuance of this lease or any renewal thereof by said second party, or any party interested therein, on said grain house or the contents thereof, that said second party will, before such insurance is effected, exhibit this lease to the agent or agents, officer or officers of the insurance company or companies through whom said grain house is to be insured, and procure the indorsement hereon of said agent or agents, officer or officers, and also upon the policies of insurance issued by them or any renewal thereof, to the effect that said insurance company will not, under any circumstances, bring or cause to be brought any claim or action at law against the party of the first part, its successors or assigns, for damages occurring

during the term of this lease, or any renewal thereof, by fire or otherwise, to the said grain house or appurtenances erected on said land, or to the contents thereof.

" 'And it is hereby mutually agreed between the parties hereto, that in case said grain house shall, at any time during the continuance of this agreement, be destroyed by fire or otherwise, this contract shall not cease and determine by reason thereof, but the said second party shall be allowed thirty (30) days within which to rebuild the same; and in case the said grain house shall not be, by said second party, rebuilt in all respects equal to one so destroyed, within thirty days from the time of the destruction by fire or otherwise, then this contract shall, at the option of the party of the first part, cease and determine, and be no longer binding upon the parties thereto.

" 'And the party of the second part also further agrees with the party of the first part, that he will remove said grain house from off the grounds of said party of the first part at any time during the aforesaid term of five (5) years after having received from the said party of the first part —— days' notice to do so.

" 'And the party of the first part agrees to recognize said grain house as the property of the party of the second part, and to permit him to remove the same, at any time, from the premises of the party of the first part.

" 'And it is also expressly understood between the parties hereto, that at expiration of the time mentioned for the continuance of the right herein granted to the second party, the said second party shall have reasonable time for removing said grain house from off the grounds of the party of the first part, said removal to be at the expense of said second party; and till such removal, the provisions of this lease regarding damages occasioned by fire, or otherwise, shall remain in full force and virtue.

" 'And said second party hereby agrees that he will not sublet said leased land nor assign nor transfer this agreement

without the consent in writing of the general manager of the party of the first part, indorsed hereon, and subject to all the conditions, covenants, limitations and restrictions of this lease, and that he will use said leased land for no other purpose than that contemplated by the terms of this contract.

" 'And the said second party hereby further agrees to paint all buildings erected by him on the herein leased premises a color in conformity with the uniform color established by said party of the first part for its buildings generally.

" 'And it is distinctly understood and agreed between the parties hereto, that in case the second party shall make default in any of the covenants herein contained on his part, to be kept and performed, or shall insure said grain house on said leased land without procuring the indorsement thereon, as hereinbefore provided in that respect, then in that case it shall and may be lawful for the said first party, its assigns, successors, agent or attorney, at its election, to declare this agreement at an end, and into or upon said premises, with the said grain house and appurtenances hereon or any part thereof, to enter with or without process of law, and the said second party or any persons occupying said premises and said grain house or appurtenances, to expel, remove and put out, using such force as may be necessary for that purpose, and occupy and possess said premises, and hold and occupy the grain house and appurtenances thereon till they can be removed or the conditions of this lease shall have been complied with by said second party; but no action or proceedings under this paragraph by the party of the first part shall in any manner release the party of the second part from the obligations and duties assumed as regards damages occasioned by fire, or otherwise, as provided for in this agreement of lease.'

"Further answering defendant says that for the various considerations named in said agreement the plaintiff herein agreed to assume, and by said contract did assume all risk of fire to his property, then or thereafter to be located upon

defendant's land as aforesaid, from any cause whatever; and that under said agreement, for said consideration the plaintiff further assumed all risk of fire from every cause, and undertook and agreed to hold and keep harmless the defendant from any and all damages whatsoever from fire or any cause to any building or buildings that might be erected upon said land, or their appurtenances and contents.

"Wherefore, defendant says that plaintiff ought not to have or maintain this case, and, having fully answered, prays to be discharged with its costs."

The issues were submitted to the court on the following agreed statement of facts, to wit: "It is hereby agreed by and between the parties hereto as follows:

"First. That the property sued for is correctly described in the petition, and was of the value therein stated, and was Agreed statement destroyed by fire on the day, at the place and of facts.      in the manner alleged in the petition.

"Second. That the lease between the parties thereto, E. F. Ordelheide and the defendant Wabash Railroad Company, dated on the first day of November, 1892, running five years from the date thereof, was executed by said parties as therein set forth, and that a correct and true copy of said lease is set out in the defendant's answer herein, and proof thereof is hereby dispensed with in this case.

"This agreement shall constitute a part of the record in the above entitled cause, and may be introduced in evidence in support of a demurrer, motion to strike out, reply, or other pleadings to be hereafter filed by the plaintiff in said cause or upon trial thereof."

The court found for the plaintiff and defendant appealed.

The case at bar is distinguishable from the case of Ins. Co. v. Railway, 74 Mo. App. 89, in this, it was not alleged in the petition in the insurance case that the loss by fire was occasioned by the negligence of the realty company, while the petition in the case in hand alleged and the agreed statement

of facts admits that the loss was occasioned by the negligence of the appellant. Section 2615, Revised Statutes of 1889, makes a railway company an insurer against loss by fire communicated directly or indirectly by its locomotive engines. Walker v. Railway, 68 Mo. App. 465. In Ins. Co. v. Railway, *supra,* it was held that a railway company, as to a building erected on its right of way by a private party under a license from the company, might, as to such building, contract against its liability as an insurer against loss by fire. This ruling of the Kansas City Court of Appeals is supported by the ruling of our supreme court in the case of Rutherford v. Railroad, 48 S. W. Rep. 921; also by the cases of Ins. Co. v. Railway, 70 Fed. Rep. 201, and by the case of Griswald v. Railway, 90 Iowa, 265. The contention that the contract relied on by appellant as exempting it from the liability created by section 2615, *supra,* is in contravention of the law of the land and void as being against public policy, is fully answered by the opinions rendered in Ins. Co. v. Railway, Griswald v. Railway, and Ins. Co. v. Railway, *supra.* In the Griswald case it was held that a railroad company might, as to an elevator erected by Griswald on its depot grounds under a license from the company, contract against its statutory liability for loss by fire communicated by its locomotive engines through the negligence of the employees of the company, and that such a contract was not against public policy. The clause of the lease relied on by the appellant as exempting it from liability, either under the statute, or at common law, reads as follows: "And the said second party hereby further agrees for himself, his heirs and assigns, that they hereby assume all risk of fire from any cause whatsoever." This clause is broad enough to carry the assumption by the lessee of risk of fire as far as the law will permit the contracting parties to go, certainly broad enough to cast on the lessee the risk of fire from the lessor's negligence. It is an elementary principle in the law of contracts that *"modus et conventio vincount legem,"*—

the form of agreement and the convention of the parties over-
rule the law.   Broom's Legal Maxims, side page 690.   To
use the language of Erle, J., in Gott v. Grady, 23 L. J. Q. B.
1, 3, "Parties to contracts are to be allowed to regulate their
rights and liabilities themselves; the court will only give effect
to the intention of the parties as it is expressed by the con-
tract."   Knoble v. Newcomb, 22 N. Y. 249.   That it is com-
petent for a party to contract against liability for damages
caused by his simple negligence, is well sustained by authority.
Gashweiler v. Railroad, 83 Mo. 112; Sherman & Redfield
on Negligence, sec. 16; Griswald v. Railway, *supra*.   But it
is not competent for parties to make agreements in violation
of an express provision of law, nor one which injuriously
affects the public.   That the contract under consideration
does not contravene any express provision of law, and does not
injuriously affect the public, is ruled by the above cited cases,
on the authority of which we reverse the judgment.   All
concur.

### SEPARATE OPINION BY JUDGE BIGGS.

If as a matter of fact, the grain elevator was intended by
the defendant as a substitute for a freight house (section 2622,
Revised Statutes 1889), for the reception of grain offered for
shipment over defendant's railroad, and that in the conduct of
the business thereof Ordelheide was to be under the control
of defendant, then the contract to build the grain house was in
furtherance of the business of the defendant as a common car-
rier, and under section 2615 of the statute the defendant
would be liable for its destruction, notwithstanding its contract
of exemption with Ordelheide, as it is conceded that the fire
was communicated through the negligence of defendant's
servants in operating a train.   This was the theory upon which
the learned circuit judge decided the case, and if the evidence
justified his conclusion as to the facts, I would agree with him.
But on the other hand, if the defendant leased the ground

Ordelheide v. Wabash R. R. Co.

to Ordelheide to build a grain house solely for his own advantage and profit and not to be used and controlled by defendant in the conduct of its business as a carrier, which facts I think appear at least inferentially from the record before us, then I can not see that any rule of public policy was violated when the defendant contracted against liability should the building be destroyed by fire communicated by its locomotives. Upon this ground I concur in reversing the judgment, but I am of the opinion the case ought to be remanded. The rule of practice is that where an appellate court in an action at law reverses a judgment in favor of plaintiff, the cause will be remanded, unless it appears that all the facts have been proven, and that upon such facts the plaintiff could not possibly recover. Gatewood v. Hart, 58 Mo. 261; Brown v. Bank, 5 Mo. App. 1; Berning v. Medart, 56 Mo. App. 443; Rutledge v. Railroad, 123 Mo. loc. cit. 140. In the Berning case, *supra,* we held that a cause should be remanded if it appeared that an hiatus in plaintiff's evidence might be supplied on a retrial. In the case here the plaintiff may be able on a retrial to show that the contract was entered into and the grain house built in aid of defendant's business as a common carrier, and that the house was intended to take the place of a freight house at Wright City, which under the statute the defendant was compelled to build. If these are the facts, the house when built was within the protection of the statute, which rendered the defendant absolutely liable for its destruction. The ruling of my associates in refusing to remand the case is, in my opinion, opposed to the decisions in the foregoing cases. This rule of practice is an important one and in the disposition of causes it ought to be strictly observed. I therefore ask that the case be certified to the supreme court.