## STATE OF MISSOURI, Respondent, v. EDWARD BENN, Appellant.

### St. Louis Court of Appeals, June 24, 1902. .

1. **Criminal Law:** PAYMENT OF WAGES: IRREDEEMABLE CHECKS: WAIVER BY LABORER: STATUTORY CONSTRUCTION. Under section 8142, Revised Statutes 1899, prohibiting the payment of wages of labor in any check  .  .  . that is not negotiable and redeemable at its face value in lawful money of the United States, the fact that defendant paid for the labor in a check issued and put in circulation by another firm did not relieve him of criminal liability.

2. ———: ———: ———: ———: CONTRACT. A laborer can not contract away or waive the benefit conferred upon him by section 8142, Revised Statutes 1899.

Appeal from Butler Circuit Court.—*Hon. James L. Fort,* Judge.

AFFIRMED.

*E. R. Lentz* for appellant.

(1)  Reading sections 8142 and 8143 together, it becomes apparent that the object of the Legislature was to prevent employers of labor from paying for

such labor in the order, note, check, memorandum, token, evidence of indebtedness, or other obligation of such employer; and that such prohibition does not extend to checks or tokens issued by other parties wholly disconnected with the business of such employer; and the failure of the information to affirmatively allege that defendant had so issued his own check or obligation in payment of such labor, renders the information fatally defective. (2) The attorney for the State in the eleventh point of his brief, as well as in his oral argument, insists that sections 8142 and 8143, Revised Statutes 1899, upon which this prosecution is based, expressly takes away from the employer and employee the right to enter into any contract for the sale of the labor of the employee, unless the same be paid for in cash. If that be true, the statute is unconstitutional and void, for the following reasons. (a) Because it is in violation of section 4, article 2 of the Constitution of Missouri, which guarantees to every person "the right to life, liberty and the enjoyment of the gains of his own industry." (b) Because it is in violation of section 30 of article 2 of the Constitution of Missouri, which provides, "That no person shall be deprived of life, liberty, or property, without due process of law." (c) Because it is in violation of section 1 of article 14 of the Constitution of the United States, prohibiting any State from depriving any person of life, liberty, or property, without due process of law. (d) Because it is in violation of the provision of section 53 of article 4 of the Constitution of Missouri, prohibiting the Legislature from passing any special law, regulating labor, trade, mining or manufacturing. (3) This statute is in violation of section 4 of article 2 of the Constitution of Missouri, because it deprives the employer of labor of the liberty to sell or dispose of his property by contract in such manner as he may see fit, and because it deprives him of the enjoyment of the

gains of his own industry. State v. Fisher, 52 Mo.
177; State v. Loomis, 115 Mo. 307; State v. Julow,
129 Mo. 163. (a) The statute is in violation of sec-
tion 30 of article 2 of the Constitution of Missouri, be-
cause it undertakes to deprive employers of labor of
the right to make contracts for the sale or disposal of
their property in such manner as they may see fit; and
without due process of law. State v. Loomis, 115 Mo.
307; State v. Julow, 129 Mo. 163; Commonwealth v.
Perry, 28 N. E. 1126; Godcharles v. Wigeman, 113 Pa.
St. 431; State v. Goodwill, 33 W. Va. 179; Millett v.
People, 117 Ill. 294; Frorer v. People, 31 N. E. 395.
(b) It is in further violation of that section, because
it attempts to declare that to be a crime which consists
alone in the exercise of a constitutional right, to-wit:
the right to contract for the sale and disposition of
their property. State v. Julow, supra. (c) It is
further in violation of that section, because it takes
away from the employers of labor one of the constit-
uent elements of property, to-wit: the right to contract
for its sale and disposition in such manner and upon
such terms as they may see fit; and that, too, without
due process of law. (4) By due process of law is
intended, the general law—a law which hears before
it condemns; which proceeds upon inquiry, and ren-
ders judgment only after trial. The meaning is, that
every citizen shall hold his life, liberty, property and
immunities under the general rules which govern so-
ciety. Bouvier's Law Dict. (Rawles Ed.), p. 622;
Webster in Dartmouth College case, 4 Wheat. 518;
State v. Julow, supra. (5) This statute condemns
before it hears. The defendant is brought before the
bar of the court and his case is prejudged in so far as
the criminality of the act is concerned. No question
can there be made or admitted as to the quality of the
act; that has been settled by previous legislative dec-
laration, and it only remains to find the act as

charged, in order to declare the guilt as charged. But the fact as charged, i. e., that defendant made a contract for the disposition of his own property, is not a crime, and will not be a crime so long as constitutional guaranties and constitutional prohibitions are respected and enforced. This statute is not due process of law. State v. Loomis, supra; State v. Julow, supra. (6) For the same considerations as in point 3, these sections of the statute are in violation of section 1, article 14, of the Federal Constitution, which prohibits any State from depriving any person of life, liberty or property without due process of law. (7) These sections of the statute are in violation of section 53 of article 4 of the Constitution of Missouri, because they are special or class legislation. This act singles out two classes of persons, viz., laborers and employers of labor, and deprives them of rights which all other persons may exercise, i. e., the right to sell and dispose of their property in such manner and upon such terms as they may by contract agree upon. Such legislation is prohibited in express language by this section of the Constitution. (8) All of the foregoing considerations apply with equal force to the laborer as to the employer. His labor is property within the meaning of section 30, article 2 of our Constitution. The right to sell and dispose of that labor, for lawful purposes, upon such terms and in such manner as he may see fit, is one of the constituent elements of property. The Constitution guarantees that this right shall not be taken away from him without due process of law. This statute deprives him of that right, and is therefore in violation of the due process of law provision of the Constitution. (9) The act of April 8, 1895 (sections 8142, 8143, 8144, R. S. 1899), is in all essential features the same as the Act of March 31, 1885 (sections 7058 and 7060, R. S. 1889). The last-named act was

declared unconstitutional by the Supreme Court in the case of State v. Loomis, 115 Mo. 307. Every argument advanced by the learned judge in support of his opinion in that case applies with equal force in this case. If the Act of 1885 was unconstitutional for the reasons given in that case, then the Act of 1895 is unconstitutional for identically the same reasons.

*David W. Hill* for respondent.

(1)   The gravamen of the offense is the paying out of an irredeemable check for wages for labor. The information follows the language of the statute and is sufficient. Sec. 8142, R. S. 1899; Wharton's Criminal Pleading and Practice (9 Ed.), p. 153, section 220; 1 Bishop's New Criminal Procedure, p. 361, sections 611 and 612; Kelley's Criminal Law and Practice, p. 113, section 187; Section 22, article 2, Constitution of Missouri.   (2)   Counsel for appellant appears to be confused about the offenses stated in sections 8142 and 8143, Revised Statutes 1899. Section 8142, supra, contains and describes one complete offense within itself. And the gravamen of the offense stated in that section is: the paying for labor with a check not redeemable in money.   Section 8143, supra, contains, describes and sets forth, completely, another offense. And the gravamen of that offense is: in not being prepared to redeem in lawful money or goods, at the option of the holder, at all times during the business hours of the day, any check issued for the payment of wages for labor, or failure to so redeem when so prepared.

BLAND, P. J.—Omitting caption, the information is as follows:

"Now comes David W. Hill, prosecuting attorney within and for the county of Butler and State of Missouri, and upon his information and belief informs the

court: That one Edward Benn, late of the county aforesaid, on the twentieth day of August, 1901, in the said county of Butler, being then and there indebted to Charles A. Madden in the sum of fifty cents for wages for labor performed by the said Charles A. Madden for the said Edward Benn, the said sum of fifty cents being then and there due and payable, did then and there unlawfully pay to the said Charles A. Madden, for the payment of said wages, a certain check, to-wit: an aluminum check (duebill) in the following words: 'Good for fifty cents in merchandise—Wright-Dalton-Bell-Anchor Store Company,' the said check not being then and there negotiable or redeemable by the said Edward Benn, or any other person, in lawful money of the United States, at its face value, to-wit: fifty cents (the figures upon the said check representing fifty cents) contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State.''

Appellant's statement of the substance of the evidence, which we adopt, is as follows:

''The evidence consisted of the testimony of Madden, the prosecuting witness, and of the defendant. Their testimony does not materially differ except in, perhaps, two points. The evidence established substantially the following facts:

''That in the summer of 1901 the defendant was in the employ of Crisle Bros., who were manufacturing lumber. During the summer Crisle went away, leaving defendant in charge of their business, left him no money with which to pay the men, but directed him to give orders on the Wright-Dalton-Bell-Anchor Store Company, for what work he had done.

''It seems that, to facilitate their business and to save labor in keeping account of a large number of small items, the Wright-Dalton-Bell-Anchor Store Company, had prepared a quantity of aluminum

checks, representing amounts from ten cents to one dollar each. That when a customer opened an account, and as often as necessary afterwards, they were charged with a certain amount, say $5 or $10, and were given an equal quantity of these checks. These checks were good for merchandise in any department of their store, and the holders could go to any department of the store and get what they wanted with them.

"It seems that the defendant had, perhaps, in the manner indicated, got some of these checks; at all events, he had some of them on or about August 20, 1901. On or about that day the prosecuting witness, Madden, performed a few hours' work—about eight hours. In the forenoon he was stacking lumber, and in the afternoon he helped the defendant move. The price of the work amounted to $1. Before Madden had done any work, the defendant told him that he had no money with which to pay him, pulled out of his pockets some of these checks, and told him that he could pay him in these.

"At this point there is a difference in the testimony as to just what was further said in that conversation. Madden says that defendant said: 'There is the kind of money I will pay you in. I said was it good for United States money, and he said it was good dollar for dollar.'

"Defendant says: 'I told him I would give him orders on the Wright-Dalton-Bell-Anchor Store Company. I pulled out some checks, which amounted to the same thing, and told him that I would pay him with them. He answered that he had to have merchandise.' When defendant's attention was called to Madden's statement, he said: 'The statement that I said it was good dollar for dollar is not correct; I said it was good dollar for dollar in merchandise. I said it was equivalent to an order.'

"When the work was done, defendant gave Mad-

den two of these checks, each calling for fifty cents in merchandise at the Wright-Dalton-Bell-Anchor Store Company's store. Madden took these checks, and that evening he got molasses at the store for one of them. Some time after that, just how long does not appear, Madden took the other fifty-cent piece and presented it at the office of the Wright-Dalton-Bell-Anchor Store Company and demanded the cash on it, which was refused. Madden says that he then presented the check to defendant and demanded the money on the same, and that defendant refused to pay it. This is denied by defendant. He then went to Hill, the prosecuting attorney, and Hill paid him the money for the check.''

For the State, the court gave the following instructions:

''The court instructs the jury, that if you believe and find from the evidence in this cause, that the defendant, Edward Benn, on the twentieth day of August 1901, was indebted to Charles A. Madden in the sum of fifty cents, for wages and labor, and that the same was then and there due from the said Benn to the said Madden, and that the said Edward Benn, on the said twentieth day of August, 1901, in said county of Butler and State of Missouri, did unlawfully pay out and circulate to Charles A. Madden, for such wages, an aluminum check (duebill) in the following words: 'Good for fifty cents in merchandise—Wright-Dalton-Bell-Anchor Store Company.' the said check not being then and there negotiable and redeemable by the said Edward Benn, or any other person for him, in lawful money of the United States, at its face value, to-wit: fifty cents, then you will find the defendant guilty as charged, and assess his punishment at a fine of not less than fifty nor more than two hundred dollars, or imprisonment in the county jail for a term not exceeding six months, or by both fine and imprisonment.

''The court instructs the jury, that in this cause

it makes no difference whether C. A. Madden agreed to accept the aluminum checks in payment for wages and labor, and you should not take such question into consideration in considering the evidence in this cause.''

The defendant asked, and the court refused, the following instructions:

''The court instructs the jury that, under the pleadings and the proofs in this cause, the defendant is not guilty, and you should so say by your verdict.

''The court instructs the jury, that the defendant was under no legal obligation to redeem in lawful money of the United States any check or checks which may have been issued by the Wright-Dalton-Bell-Anchor Store Company.

''The court instructs the jury, that if you believe, and find from the testimony in this cause, that defendant, at or prior to the time the prosecuting witness commenced working for the defendant, if you find from the testimony that he did do any work or labor for defendant, told prosecuting witness he had no money, but that he could pay him in merchandise orders or checks on the Wright-Dalton-Bell-Anchor Store Company, and that prosecuting witness, Madden, agreed to accept said checks in payment for his labor, and did so accept the same in payment thereof, then the defendant is not guilty of the offense so charged against him, and you should so say by your verdict.''

The jury found the defendant guilty and assessed his punishment at a fine of one hundred dollars. A motion for new trial being denied defendant appealed.

I.    The section of the statute upon which the information is grounded is section 8142, Revised Statutes 1899, and reads as follows:

''It shall not be lawful for any person, firm or corporation in this State to issue, pay out or circulate,

for payment of the wages of labor, any order, note, check, memorandum, token, evidence of indebtedness, or other obligation, unless the same is negotiable and redeemable at its face value, in lawful money of the United States, by the person, firm or corporation issuing the same.''

This statute prohibits the payment of wages of labor in any check, etc., that is not negotiable and redeemable at its face value in lawful money of the United States. Under the statute it is wholly immaterial by whom such check, etc., is issued or put in circulation. The offense consists in using the irredeemable check, etc., by any one in payment of wages of labor. It prohibits the use of all instruments not negotiable and redeemable in money in the payment of wages of labor, and whoever uses one for that purpose violates the section, regardless of who may have issued it or at what store it is payable in merchandise. The trial court so construed the statute as is demonstrated by the given and refused instructions.

II. Can the laborer contract away or waive the benefit conferred upon him by the statute? It is contended by the appellant that he may, and he moved the court to so instruct the jury. The statute was designed to protect the laboring class from a prevalent evil, to-wit, that of receiving payment of their wages from their employers by checks, punch-outs, etc., redeemable in merchandise only, and usually at the employer's store. If one laborer can waive or contract away the benefit secured by the statute, so may every other laborer. If this can be done, what is then to hinder the persons, firms and corporations, scheming to make a profit from both the labor and the wages of the laborer, from incorporating in the contract of hire an express stipulation that the laborer waives his right to demand payment of his wages in money and agrees to take a check, or what not, redeemable in merchan-

dise at his employer's store and thus effectually nullify the statute? The statute is the offspring of necessity and is an expression of legislative policy. It expresses in part the public policy of the State, and can not be waived or contracted away. Turley v. Edwards, 18 Mo. App. 676; Karnes v. Ins. Co., 144 Mo. 413; Woolfolk v. Duncan, 80 Mo. App. 421. What the law prohibits can not be enforced by contract. Ordelheide v. Wabash R. R. Co., 80 Mo. App. 357; Porter v. Jones, 52 Mo. 399; Murphy v. Bottomer et al., 40 Mo. 67.

The information follows the language of the statute in specifically alleging the offense that was committed and is sufficient. The judgment is affirmed. *Barclay* and *Goode, JJ.,* concur.